**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

        **v.**                                                  **1:04-CR-0524**
                                                                 **(GLS)**

**ZIYA OZBAY and YALCIN OZBAY,**

                **Defendants.**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE UNITED STATES:** | |
| HON. GLENN T. SUDDABY<br>United States Attorney<br>445 Broadway<br>218 James T. Foley U.S. Courthouse<br>Albany, New York 12207-0247 | ELIZABETH C. COOMBE<br>Assistant U.S. Attorney |
| **FOR THE DEFENDANT ZIYA OZBAY:** | |
| TOBIN, DEMPF LAW FIRM<br>33 Elk Street<br>Albany, New York 12207 | KEVIN A. LUIBRAND, ESQ. |
| **FOR THE DEFENDANT YALCIN OZBAY:** | |
| OFFICE OF MARK A. MAJOR<br>324 West Avenue<br>Saratoga Springs, New York 12866 | MARK A. MAJOR, ESQ. |

**Gary L. Sharpe**

1

**U.S. District Judge**

**Decision and Order**

**I. Introduction**

Ziya and Yalcin Ozbay move for judgments of acquittal following their convictions for structuring monetary transactions and tax related offenses. *See Ziya Ozbay Mot., Dkt. No. 237*; *Yalcin Ozbay Mot., Dkt. No. 238*; *see also* FED. R. CRIM. P. 29(c). After the government's direct case, the court granted partial judgments of acquittal because the evidence was insufficient to prove that either defendant had aided and abetted offenses related to Birol Ozbay's corporations. For the reasons that follow, the current motions are denied.

**II. Discussion**

**A. Standard of Review**

The standard of review governing a motion for judgment of acquittal is well-established. The ultimate question is "whether, after viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (quoting *Jackson v. Va.*, 443 U.S. 307, 319 (1979)). When, as here,

2

defendants challenge a verdict, they bear a heavy burden to demonstrate that the underlying evidence is "nonexistent or so meager that no reasonable jury could have..." convicted. *Espaillet*, 380 F.3d at 718 (internal quotation marks and citation omitted). The court must resolve issues of credibility in favor of the verdict, it must credit every inference in favor of the government, and the proof need not exclude all possible hypotheses of innocence. *See id.*; *see also U.S. v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001). The court must not be myopic in its analysis. Instead, it must consider the totality of the evidence, each piece in conjunction with the others. *See U.S. v. Cassese*, 428 F.3d 92, 98-99 (2d Cir. 2005) (citing *U.S. v. Glenn*, 312 F.3d 58, 69 (2d Cir. 2002); *U.S. v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). The court has no authority to substitute its evaluation of the evidence for that of the jury, especially since a judge's personal views are irrelevant. *See Espaillet*, 380 F.3d at 718.

## B. The Counts of Conviction

As a principal or an accessory, Ziya Ozbay was convicted of failing to file corporate tax returns for Ozbay Service Center, Inc. for the years 1999-2003. *See* 26 U.S.C. § 7203 and 18 U.S.C. § 2; *see also Superseding Indictment ("Indictment"), Cts. 2-6, Dkt. No. 163*. His motion must be

denied if any rational trier of fact could have found that he, as a principal or an accessory: (1) was required by law or regulation to file an Ozbay Service Center, Inc. corporate tax return; (2) failed to file such a return for each tax year; and (3) that his failure to file was knowing and willful. *See* 3 L. Sand, *et.al.*, *Modern Federal Jury Instructions-Criminal*, § 59.02.

As principals or accessories, Ziya Ozbay (Counts 7, 11-15) and Yalcin Ozbay (Counts 7 and 11, 17-35) were convicted of failing to pay employee withholding and Federal Insurance Contribution Act ("F.I.C.A.") taxes (collectively, "trust fund taxes") on behalf of employees at Ozbay Service Center, Inc. (Counts 7, 11-15), Erin and Faek Corporation (Counts 17-33), and U.S. Mart, Inc. (Counts 34-35). *See* 26 U.S.C. § 7202 and 18 U.S.C. § 2; *see also Indictment, Cts. 7, 11-15, 17-35, Dkt. No. 163*. Their motions must be denied if any rational trier of fact could have found that they, as a principal or an accessory: (1) were required to collect, account for, and pay over trust fund taxes owed by an employee; and (2) that they willfully failed either to collect, or to account for, or to pay over such taxes. Responsible persons must comply, and when determining who is a responsible person, no single factor is dispositive. Relevant considerations include whether an individual: (1) is an officer or member of the board of

4

directors; (2) owns shares or possesses an entrepreneurial stake in the company; (3) is active in the management of the day-to-day affairs of the company; (4) has the ability to hire and fire employees; (5) makes decisions which, when and in what order outstanding debts or taxes will be paid; (6) exercises control over daily bank accounts and disbursement records; and (7) has check-signing authority.  See *Slodov v. U.S.*, 436 U.S. 238 (1978); *Winter v. U.S.,* 196 F.3d 339 (2d Cir. 1999); *U.S. v. Evangelista*, 122 F.3d 112 (2d Cir. 1997); *U.S. v. Rem*, 38 F.3d 634 (2d Cir. 1994).

Yalcin Ozbay was convicted of filing a false 2002 personal tax return by falsely under-reporting other income.  See 26 U.S.C. § 7206(1); *see also Indictment, Ct. 16, Dkt. No. 163*.  His motion must be denied if any rational trier of fact could have found that he: (1) subscribed and filed a 2002 joint Individual Income Tax return; (2) that the return contained a written declaration that it was made under penalty of perjury; (3) that he did not believe the return to be true and correct as to every material matter; and (4) that he acted willfully.  See 3 L. Sand, *et.al.*, *Modern Federal Jury Instructions-Criminal*, § 59.03.

As principals or accessories, Ziya and Yalcin Ozbay were convicted

5

of structuring monetary transactions at various banks in order to avoid $10,000 reporting requirements. The indictment alleged that they did so from November 4, 1999-June 30, 2003, at Key Bank (Count 45), from October 29, 1999-January 16, 2002, at Key Bank (Count 46), and from January 15, 2002-May 15, 2002, at Fleet Bank (Count 47). *See* 31 U.S.C. §§ 5324(a)(3), (d)(1) and 18 U.S.C. § 2; *see also Indictment, Cts. 45-47, Dkt. No. 163*. Their motions must be denied if any rational trier of fact could have found that they, as a principal or an accessory: (1) engaged in acts of structuring; (2) with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) had the intent to evade this reporting requirement. Structuring a transaction occurs if a person, acting alone or in conjunction with others, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements. It includes breaking down a single sum of currency exceeding $10,000 into smaller sums, or the conduct of transactions, or a series of currency transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on

any single day to constitute structuring.  Where there is evidence of a pattern of structuring as well as evidence of other transactions which generated CTR filings, it is permissible to infer that a person knows of and intends to evade currency reporting requirements.  *See* 3 L. Sand, *et.al.*, *Modern Federal Jury Instructions-Criminal*, § 50B.05.

As principals or accessories, Ziya and Yalcin Ozbay were convicted of obstructing and impeding the Internal Revenue Service by, *inter alia*, engaging in the illegal activity already recited in the earlier counts of conviction.  *See* 26 U.S.C. § 7212(a) and 18 U.S.C. § 2; *see also Indictment, Ct. 1*, *Dkt. No. 163*.  Their motions must be denied if any rational trier of fact could have found that they, as a principal or an accessory: (1) corruptly; (2) endeavored; (3) to obstruct or impede the due administration of the revenue laws.  A defendant acts corruptly when he intentionally seeks to secure an unlawful advantage or benefit either for himself or another.  The term "corruptly" encompasses activities that seek to thwart the efforts to execute the internal revenue laws.  "Endeavor" means to knowingly and intentionally act or to knowingly and intentionally make any effort which has a reasonable tendency to bring about the desired result.  The indictment alleged that the defendants violated this

7

statute in various ways, including: (1) intentionally failing to maintain books and records that fully and accurately recorded the operation of named corporations; (2) intentionally failing to provide necessary books and records to their accountant as to various named corporations; (3) intentionally failing to keep their various corporate operations separate and distinct; (4) intentionally failing to pay federal withholding taxes and FICA taxes for various gas station employees; (5) hiding their total cash deposits from the internal revenue service by structuring cash deposits and avoiding the CTR requirements; (6) intentionally failing to file corporate income tax returns for various named corporations; (7) intentionally failing to file personal income tax returns; and (8) intentionally filing inaccurate personal and corporate income tax returns as specified.  *See* 3 L. Sand, *et.al.*, *Modern Federal Jury Instructions-Criminal*, § 59.05.

Regarding the counts charging violations of 18 U.S.C. § 2, the law governing principal and accessorial liability is clear.  A defendant may be convicted if he committed each element of a crime himself (said otherwise, he was the principal), or if he aided and abetted the commission of a crime by others or he was aided and abetted in the commission of the crime by others.  Thus, guilt may be established without proof that a defendant

8

personally did every act constituting an offense.  To aid and abet means more than just knowing that a crime is being committed.  Instead, a defendant must knowingly and willfully associate himself with a crime, he must participate in it as something he wishes to bring about, and he must seek by his actions to make it succeed.  He may be convicted if he counsels or induces its commission with the requisite *mens rea*.

Regarding *mens rea*, participation must be "willful," meaning that action is taken voluntarily and intentionally with a bad purpose to disobey the law.  Participation must be "knowing," meaning that a defendant has an awareness of the existing circumstances.  In other words, if a defendant is fully aware that what he is doing plays a significant role and intentionally participates in facilitating a transaction prohibited by law, he is equally guilty as the person who directly performs the illegal acts, even though the other played a greater or much larger role in the perpetuation of the crime. Aiding and abetting, or causing or inducing another to commit a crime must be determined by one's overt conduct, acts and statements; although it is not necessary that the acts alleged to have constituted aiding and abetting be criminal in and of themselves.  *See* 1 L. Sand, *et.al.*, *Modern Federal Jury Instructions-Criminal*, § 11.01.

## C. <u>The Trial Evidence</u>

Through testimony and exhibits, the trial evidence overwhelmingly demonstrated that brothers, Ziya and Mustafa Ozbay, Yalcin Ozbay (Ziya's son-in-law), and Birol Ozbay (Mustafa's son), owned and operated various gas stations in the Capitol District area.  Daily, the gas stations generated thousands of dollars in cash, and the four conducted business pursuant to an imaginative scheme designed to preclude I.R.S. detection of their gross income.  They failed to accurately account for their income in records they maintained for the respective stations, and they hid the total by engaging, *inter alia*, in the following conduct: (1) failing to provide accurate records to their accountant; (2) failing to file, or inaccurately filing, personal and corporate income tax returns; (3) commingling receipts and disbursements among several of the gas stations; (4) hiding cash payments to their employees by failing to withhold and pay trust fund taxes; (5) hiding cash receipts by paying suppliers and vendors in cash, and by paying cash for personal purchases; and, (6) structuring deposits in their bank accounts to avoid compliance with currency reporting requirements.

The scheme to hide profits and avoid taxation began when Ziya and Mustafa Ozbay purchased Ozbay Service Center, Inc. in 1993.  Thereafter,

10

the same scheme was used at each successive gas station purchased, owned, managed and operated by one or more of the Ozbays throughout the period encompassed by the indictment.

According to the testimony and corporate records, Ziya and Mustafa Ozbay were equal shareholders and co-owners of Ozbay Service Center, Inc. in Schenectady, and they shared the management responsibility on a biannual basis. In April of each year, one turned the management of the business over to the other. Accordingly, each had responsibility for the business during some part of every calendar year. From November 1999-June 2003, part of Ozbay Service Center, Inc.'s cash receipts were deposited in Key Bank (Count 45 structuring charge).

During the period encompassed by the indictment, Yalcin Ozbay purchased other gas stations, incorporated them under the names Erin & Faek Corporation and U.S. Mart, Inc., and managed and operated them according to the Ozbay Service Center, Inc. scheme designed to mask profits. Those stations were located in Ballston Spa, Glenmont, South Glens Falls, and Clifton Park. From October 1999-January 2002 and January 2002-May 2002, cash receipts from those stations were deposited in Key and Fleet Banks (Counts 46-47 structuring charges).

11

As to Ozbay Service Center, Inc., there was ample evidence to support the conclusion that the corporation engaged in a pattern of structuring deposits in Key Bank account 3658 so as to avoid cash transaction reporting requirements. Not only was the evidence overwhelming that Ziya Ozbay caused this to happen as a matter of routine, but there was testimony that he made such deposits himself. The evidence amply demonstrated that he was personally involved in the business' finances, signed checks, and paid employees under the table, thus avoiding his obligation to pay trust fund taxes. The evidence is undisputed that the corporation was required to file an annual return, it failed to do so for the years 1999-2003, and that as one of two equal shareholders in the corporation, he was responsible for filing. His effort to thwart the *mens rea* requirement by arguing good faith reliance on the conduct of his accountant was squarely presented to the jury and rejected. So too, he was a responsible person within the definition of those required to pay trust fund taxes on behalf of employees, and he failed to do so.

As for Yalcin Ozbay's participation in the affairs of Ozbay Service Center, Inc. - and at least insofar as his counts of conviction are concerned - there was ample evidence to support the jury's conclusion that he was a

12

principal in the crimes or induced others to commit them, all as encompassed by the definition of accessorial liability.  During the period encompassed by the indictment and during the portion of the years that Ziya Ozbay managed the business, Yalcin Osbay was designated as either an owner, manager, or corporate President, and directly participated in the business' management.  There was evidence that he was fully conversant with the requirements of reporting cash transactions, and that he did the following: (1) directly participated in making structured deposits, and caused others to do so; (2) failed to provide cash receipts records to the accountant; (3) made cash payments to vendors and for personal purchases; and (4) paid employees under the table, thus avoiding his corporate obligation as a responsible person to pay trust fund taxes.

Yalcin Ozbay was the dominant figure in the management of the other stations encompassed by the counts of conviction, but the evidence also supported the jury's conclusion that Ziya Ozbay participated as either a principal or an aider and abettor.  As to each of the stations, Yalcin Ozbay engaged in all of the acts that were a part of the scheme to avoid detection of the cash receipts.  He failed to provide accurate records to the

13

accountant, and as with Ziya, the jury rejected his tax defense of good faith reliance on the accountant. He signed his 2002 joint tax return under the penalty of perjury, he willfully failed to report other income he received that year, and other income was a material matter. He paid all of his employees under the table, thus avoiding his Erin & Faek and U.S. Mart corporate obligations as a responsible person to pay trust fund taxes. Just as he assisted structuring cash transactions at Ozbay Service Center, Inc., he continued the pattern at his own enterprises (Counts 46-47).

So too, the evidence was sufficient to support the jury's verdict regarding Ziya Ozbay's participation in Yalcin's other stations insofar as the counts of conviction are concerned. First of all, he and his brother concocted the overall scheme begun at Ozbay Service Center and continued in Yalcin's enterprises. He generated the capital used to purchase a station, he was a shareholder in Erin & Faek, he was a signatory on the corporation's Key Bank account, he was designated as Vice-President on the account, and he received paychecks from the corporation. At times, he participated in management issues as was demonstrated by his intercession in theft allegations regarding an employee. So too, proof of accessorial liability was warranted by evidence

14

that cash and purchases were commingled between accounts of Ozbay Service Center and Erin & Faek.

In their motions, Ziya and Yalcin Ozbay offer little to refute the overwhelming evidence of their participation in the crimes of conviction. They do, however, resuscitate an argument raised at trial, and obviously rejected by the jury. Focusing on an isolated view of the evidence, they attempt to attack the structuring convictions by arguing that the exhibits fail to prove that they generated daily receipts exceeding $10,000. Thus, they conclude that they could not have structured transactions. Their argument finds no support in the totality of the evidence, and the issue of daily receipts is irrelevant to the elements of structuring in any event.

## III. Conclusion

The evidence overwhelmingly supports the jury's conclusion that as either a principal or an accessory, Ziya and Yalcin Ozbay committed the crimes for which they were convicted. Accordingly, it is hereby

**ORDERED** that the motions of Ziya Ozbay (*Dkt. No. 237*) and Yalcin Ozbay (*Dkt. No. 238*) seeking judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure are **DENIED**, and it is further

**ORDERED** that the Clerk of Court shall electronically serve this

15

decision and order on all parties.

**SO ORDERED.**

**Date: February 27, 2007
       Albany, New York**

_____
Gary L. Sharpe
U.S. District Judge